# Days of Service by Special Government Employees

The longstanding interpretation of the Executive Branch that service by a special government employee during any part of a day counts as a full day under 18 U.S.C. §§ 203 and 205, which impose greater conflict of interest restrictions after a special government employee works 60 days, is reaffirmed.

January 26, 2007

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF DEFENSE

Under some provisions of the criminal conflict of interest laws, a "special Government employee" or "SGE"—an employee expected to work no more than 130 days during a 365-day period—is subject to less extensive restrictions than a regular government employee. Those constraints increase, however, when the SGE has served in an agency for more than sixty days during the preceding 365-day period. *See, e.g.*, 18 U.S.C. §§ 203, 205 (2000). The longstanding interpretation of the Executive Branch has been that service for any part of a day counts as a full day of service toward the sixty-day limit. You have asked us to overturn that interpretation and to count only time the SGE has actually worked, so that a single day for counting purposes would comprise eight hours of work, even if performed over several days. We reaffirm the existing interpretation.[1]

---

[1] Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from William J. Haynes II, General Counsel, Department of Defense, *Re: Computation of the Service of Special Government Employees* (Aug. 22, 2005) ("DoD Letter"). We sought, and received, the views of the Office of Government Ethics ("OGE"). *See* Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from Marilyn L. Glynn, General Counsel, Office of Government Ethics (Oct. 3, 2005) ("OGE Letter"). OGE "does not support" the interpretation advocated in the DoD Letter. OGE Letter at 4. Your office provided a response to the OGE Letter. Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from Daniel J. Dell'Orto, Principal Deputy General Counsel, Department of Defense, *Re: Computation of the Service of Special Government Employee*s (July 6, 2006) ("DoD Response").

We understand the DoD letter to address only the computation of 60 days of service, rather than how to estimate whether an employee will work more than 130 days in a 365-day period and thus not qualify as an SGE. *See* DoD Letter, Attachment, *Employment of Experts and Consultants (Counting Days or Hours)* at 1; DoD Response, Attachment, *Computation of Service for Special Government Employees for Purposes of Application of 18 U.S.C. 203 and 205*, at 1. The rule for counting the expected number of workdays towards the 130-day limit has always been the same as for the 60-day limit—a partial day counts as a full day—and is equally longstanding. *See* Memorandum to the Heads of Executive Departments and Agencies, *Re: Preventing Conflicts of Interest on the Part of Special Government Employees*, 28 Fed. Reg. 4539, 4541, 4542 (May 2, 1963) ("Presidential Memorandum"); *see also* OGE Letter at 1 (noting that the counting rule applies outside the context addressed by the DoD Letter).

## I.

The term "special Government employee" is defined to include

> an officer or employee of the executive or legislative branch of the United States Government, of any independent agency of the United States or of the District of Columbia, who is retained, designated, appointed, or employed to perform, with or without compensation, for not to exceed one hundred and thirty days during any period of three hundred and sixty-five consecutive days, temporary duties either on a full-time or intermittent basis. . . .

18 U.S.C. § 202(a) (2000). Section 203 of title 18 generally forbids an officer or employee of the Executive Branch from (among other things) seeking, receiving, or agreeing to receive "any compensation for any representational services, as agent or attorney or otherwise, rendered or to be rendered either personally or by another" in any particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, court, or officer. *Id.* § 203(a)(1). An SGE, however, is subject to this prohibition "only in relation to a particular matter involving a specific party or parties," where either (1) the SGE "has at any time participated personally and substantially as a Government employee or [SGE]" in the matter or (2) the matter "is pending in the department or agency" in which the SGE is serving. The second ground of coverage—that the matter is pending in the SGE's department or agency—does not apply if the SGE "has served in such department or agency no more than sixty days during the immediately preceding period of three hundred and sixty-five consecutive days." *Id.* § 203(c). Thus, until an SGE exceeds the sixty-day limit, he can receive fees for most matters that are pending before the agency where he serves, so long as he has not personally been involved in the matters as a government employee. For example, an SGE who is also a partner in a law firm generally can receive a share of fees in a specific-party matter pending in his agency until he exceeds sixty days of service during the preceding 365 days. *See Application of Conflict of Interest Rules to the Conduct of Government Litigation by Private Attorneys*, 4B Op. O.L.C. 434, 441, 444 (1980) (attaching, as appendix, Memorandum Opinion for the Deputy Associate Attorney General, from Larry A. Hammond, Deputy Assistant Attorney General, Office of Legal Counsel (Mar. 23, 1979) (discussing section 203 with regard to temporary attorneys)).

Section 205 is similar in relevant respects. It generally bars an officer or employee of the United States from (among other things) "act[ing] as agent or attorney for prosecuting any claim against the United States" or "act[ing] as agent or attorney for anyone" before any department, agency, court, or officer in connection with a particular matter in which the United States is a party or has a direct and substantial interest. 18 U.S.C. § 205(a). As with section 203, an SGE is

subject to this prohibition only as to a specific-party matter (1) on which he worked as a government employee, or (2) which is pending in the department or agency where he is serving. The second ground for coverage, once again, does not apply if the SGE "has served in such department or agency no more than sixty days in the preceding period of three hundred and sixty-five consecutive days." *Id.* § 205(c). Thus, for example, an SGE could serve as an attorney or agent for a client who is pursuing a claim before the SGE's agency, but only if the SGE has not exceeded the sixty-day limit (and, of course, he has not worked on the matter as a government employee). *See Employment of Temporary or Intermittent Attorneys and Investigators by the Office of Special Counsel*, 3 Op. O.L.C. 78, 83 (1979) ("*Temporary or Intermittent Attorneys*") (generally discussing section 205(c)).

Congress created the statutory category of "special Government employee[s]" in 1962 as part of a comprehensive revision of the conflict of interest laws. Pub. L. No. 87-849, 76 Stat. 1119 (1962). Less than four months after the legislation took effect, President Kennedy issued a detailed memorandum to the heads of executive departments and agencies discussing its impact. Presidential Memorandum, *supra* note 1. The President stated that "[a] part of a day should be counted as a full day in connection with the 60-day standard." *Id.* at 4542; *see also id.* at 4541 (stating that "[a] part of a day should be counted as a full day for purposes of this [130-day] estimate"). The Executive Branch has maintained this interpretation ever since. Although President Johnson's Executive Order 11222, Prescribing Standards of Ethical Conduct for Government Officers and Employees (May 8, 1965), 3 C.F.R. 130 (1965 Supp.), supplanted and revoked the Presidential Memorandum, President Kennedy's position that partial days of work would count as full days towards the sixty-day limit was continued in the Federal Personnel Manual, app. C-12 (Nov. 9, 1965, revised July 1969, revoked 1994), issued the same year by the Civil Service Commission, to which President Johnson's Executive Order 11222 had delegated authority in this area.[2] Since then, the opinions of both our Office and the Office of Government Ethics consistently have applied the same counting rule. *See, e.g.*, *Service of Private Sector Persons on Food and Drug Administra-*

---

[2] When the Presidential Memorandum "was rescinded by Executive Order 11222 (May 8, 1965) . . . some provisions were retained in Part III of Executive Order 11222, and the remainder were designated for inclusion in Appendix C [of the Federal Personnel Manual]." Letter for Patricia Schroeder, U.S. House of Representatives, from Larry L. Simms, Deputy Assistant Attorney General, Office of Legal Counsel at 1 (Apr. 8, 1982) ("1982 Letter"). As OGE has explained, Executive Order 11222 delegated to the Civil Service Commission the President's authority to issue regulations for the conduct of persons in the civil service, and "[i]n pursuance of an understanding with interested agencies at the time Executive Order 11222 was drafted, the Civil Service Commission on November 9, 1965, reinstated the most significant portions of the [Presidential Memorandum] . . . by publishing them as instructions of Governmentwide applicability in the form of Appendix C [to the Federal Personnel Manual]." OGE, *Memorandum to Heads of Departments and Agencies of the Executive Branch Regarding Members of Federal Advisory Committees and the Conflict-of-Interest Statutes*, Informal Advisory Mem. 82x22, 1982 WL 31878, at *4 (July 9).

*tion Advisory Committees*, 2 Op. O.L.C. 151, 155 n.3 (1978) ("*Advisory Committees*") (reaffirming the interpretation of the Presidential Memorandum); Memorandum for Dudley Chapman, Associate Counsel to the President, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel (July 10, 1974); Memorandum for Charles F.C. Ruff, Associate Deputy Attorney General, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Application of the Conflict of Interest Laws to Special Assistant United States Attorney Frank W. Dunham, Jr.* at 2 (Apr. 19, 1979) (following the view of the Federal Personnel Manual, embodying the Presidential Memorandum); Memorandum for Fred F. Fielding, Counsel to the President, from Ralph W. Tarr, Acting Assistant Attorney General, Office of Legal Counsel, *Re: President's Council on Physical Fitness and Sports* at 6 n.6 (Feb. 8, 1985) (citing and following the view of the Federal Personnel Manual); OGE, *Memorandum to Designated Agency Ethics Officials, General Counsels and Inspectors General Regarding Summary of Ethical Requirements Applicable to Special Government Employments*, Informal Advisory Mem. 00x1, 2000 WL 33407342, at *15 n.10 (Feb. 15); *see also Restrictions on a Federal Appointee's Continued Employment by a Private Law Firm*, 7 Op. O.L.C. 123, 126 (1983) (employing the same rule for counting a "day" in estimating whether an employee is expected to work 130 days in the next 365 days); *Temporary or Intermittent Attorneys*, 3 Op. O.L.C. at 81 (same); OGE, *Letter to a Private Attorney*, Informal Advisory Ltr. 84x4, 1984 WL 50157, at *1 (Apr. 6) (same).

For two principal reasons, you contend that this interpretation of sections 203 and 205 should be changed and that "the service of SGEs may be computed on an hourly basis." DoD Letter at 1. First, a 1962 opinion of the Attorney General referred to the Hatch Act as a guide in determining when the conflict of interest laws apply to intermittent employees, *Conflict-of-Interest Statutes: Intermittent Consultants or Advisers*, 42 Op. Att'y Gen. 111, 117 (1962) ("1962 Opinion"), and, since 1994, the Office of Personnel Management ("OPM") has interpreted the Hatch Act to apply only when employees are on duty. *See* 5 C.F.R. § 734.601 (2006). Because "OPM now applies the Hatch Act when SGEs are only 'on duty,'" you urge that "it is logical to assume that 'days of service' should now also be computed on the 'on duty' or hourly basis." DoD Letter, Attachment, *Hatch Act*. Second, you explain that when the rule on counting days under 18 U.S.C. §§ 203 and 205 was formulated, "pay for consultants was computed only on [a] daily rate," but agencies "now have authority to pay experts and consultants by the hour." DoD Letter, Attachment, *Employment of Experts and Consultants (Counting Days or Hours)*. You contend that "[t]his is further evidence that the intent of the law is to cover only the hours worked, and that working one hour of one day does not mean that the consultant worked an entire day." *Id.*

## II.

### A.

Since shortly after Congress created the category of "special Government employees," the Executive Branch consistently has adhered to the interpretation that, under 18 U.S.C. §§ 203 and 205, an SGE "serve[s] in [his] department or agency" on any day on which he works and that each such day thus counts as a full day toward the sixty-day threshold triggering additional restrictions. We would not depart from that contemporaneous and continuous interpretation absent compelling reasons to do so. As explained, we see no such reasons. First, that interpretation accords with the plain meaning of the statutory text, and Congress has not disturbed that understanding when amending sections 203 and 205. Second, we do not believe that a change in the interpretation of the Hatch Act or in the rules for paying consultants justifies such a departure.

The term "days" of service, as used in sections 203 and 205, is better read to mean calendar days on which the SGE performed work for the agency, rather than units consisting of eight hours of work that an employee may have performed over the course of several calendar days. That understanding is consistent with the ordinary meaning of the term "day" at the time of enactment (as well as today). *See Webster's New International Dictionary* 672 (2d ed. 1958) ("3. The mean solar day, used in ordinary reckoning of time . . . —called, specif., the *civil day*. This is the period recognized by courts as a day."); *accord Random House Dictionary of the English Language* 369–70 (1966); *see also The Pocket Veto Case*, 279 U.S. 655, 679 (1929) ("The word 'days,' when not qualified, means in ordinary and common usage calendar days."); *Butterbaugh v. Dep't of Justice*, 336 F.3d 1332, 1337 (Fed. Cir. 2003) ("the ordinary meaning of 'day' is a calendar day"). The term "day" also commonly is used to denote the portion of a calendar day that is set aside for work, but even that meaning refers to a portion of a single calendar day devoted to work, rather than to a collection of eight hours of work performed over several days. *See Black's Law Dictionary* 473 (4th rev. ed. 1968) ("7. The period of time, *within the limits of a natural day*, set apart either by law or by common usage for the transaction of particular business or the performance of labor . . . .") (emphasis added); *Random House Dictionary* 370 ("5. The *portion of a day* allotted to labor: *an eight hour day*.") (emphasis added to first selection).

Context also supports the conclusion that the term refers to calendar days. Both sections 203 and 205 refer to the sixty-day period in relation to "the immediately preceding period of three hundred and sixty-five consecutive days." 18 U.S.C. §§ 203(c), 205(c). The word "days" as used here is most naturally understood to refer to the number of calendar days comprising an ordinary year. Congress presumably intended the word "days" to have the same meaning both places that it appears in the same section, the only difference being, as the statute indicates, that

the 365 "days" are to be consecutive, but the sixty "days" need not be. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 86 (2006) ("Generally, identical words used in different parts of the same statute are . . . presumed to have the same meaning.") (internal quotation marks omitted). Particularly because the legislation specifically dealt with conflict of interest rules governing "the *part-time* services of consultants and advisers," S. Rep. No. 87-2213, at 7 (1962) (emphasis added); 18 U.S.C. § 202(a) (addressing the performance of "temporary duties either on a full-time or intermittent basis"), it seems likely that Congress would have expressed the sixty-day limitation in terms of the number of hours worked if its intent had been only to count the portion of the day an SGE actually worked.

This understanding is consistent with the interpretation of one authoritative commentator at the time of the legislation's passage. Professor Bayless Manning, who was a member of the President's Advisory Panel on Ethics and Conflicts of Interest in Government whose 1961 report spurred interest in reform, *see* Special Message to the Congress on Conflict-of-Interest Legislation and on Problems of Ethics in Government (Apr. 27, 1961), 1 *Pub. Papers of Pres. John F. Kennedy* 326, 327 (1961); S. Rep. No. 87-2213, at 6, and who participated in the development of the legislation enacted in 1962, *see* Bayless Manning, *Federal Conflict of Interest Law* vii (1964), wrote of the 130-day limitation contained in section 202(a): "It seems quite clear that under Section 202 the employee's working time is not to be computed on a[n] . . . hour by hour basis. In principle, the employee will be considered to have worked a day for the government if he has worked a part of the day." *Id.* at 28.

Furthermore, the longstanding view of the Executive Branch, in accordance with the language of the statutes and pursuant to the 1963 Presidential Memorandum, has particular weight here. First, in *Advisory Committees*, we noted that "[t]he Presidential [M]emorandum was drafted by the Office of Legal Counsel and therefore reflects a contemporaneous interpretation of the conflict of interest laws by the Department charged with construing them." 2 Op. O.L.C. at 155 n.3. Perhaps the principle that "considerable weight must be accorded" to an agency's "contemporaneous interpretation of the statute it is entrusted to administer," *CFTC v. Schor*, 478 U.S. 833, 844 (1986), would not apply when courts construe a criminal statute such as section 207, *see Crandon v. United States*, 494 U.S. 152, 177 (1990) (Scalia, J., concurring in judgment) ("[W]e have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference."). We nonetheless believe that an interpretation issued by the President that has not been repudiated (even if, as explained below, it is no longer formally in effect) should have particular weight in *our* analysis of the position to be taken by the Executive Branch. Under Article II of the Constitution, the President has the authority to determine the Executive Branch's interpretation of the law:

> The ordinary duties of officers prescribed by statute come under the general administrative control of the President by virtue of the general grant to him of the executive power, and he may properly supervise and guide their construction of the statutes under which they act in order to secure that unitary and uniform execution of the laws which article 2 of the Constitution evidently contemplated in vesting general executive power in the President alone.

*Myers v. United States*, 272 U.S. 52, 135 (1926). The Presidential Memorandum was an exercise of this power by the President, intended "to achieve the maximum uniformity possible in order to insure general standards of common application throughout the Government." 28 Fed. Reg. at 4540.[3]

Second, this presidential interpretation has been continuously followed ever since, a point that is true notwithstanding the current absence of a formal directive mandating this method of computing the number of days. As explained above in Part I, President Kennedy's interpretation was adopted and reissued by the Civil Service Commission in 1965; it was expressly and continuously in force for twenty-nine years. In January 1994, the Office of Personnel Management, the successor to the Civil Service Commission, abolished the Federal Personnel Manual in an effort to establish "a more flexible and simpler system which will untie the hands of frontline users." Office of Personnel Management, Press Release, *From Red Tape to Results: OPM Bids Farewell to the FPM* (Jan. 26, 1994); *see* 59 Fed. Reg. 2945 (Jan. 20, 1994) (deleting references to the Federal Personnel Manual). But there has been no suggestion that OPM has retreated from the partial-day rule, and no part of this history reflects any concern about the legal basis for that rule. Indeed, as noted above, the opinions of this Office and those of OGE have consistently relied upon the interpretation embodied in the Presidential Memorandum.

---

[3] Arguably, because the Presidential Memorandum declares that "[a] part of a day *should* be counted as a full day," 28 Fed. Reg. at 4542 (emphasis added), it offers prudential advice, rather than an interpretation of the statute. Reading that sentence in context, however, we believe that the "should" reflects instead a directive based on statutory interpretation. The direction about the treatment of a partial day appears in the first sentence of a two-sentence paragraph about counting the 60 days. The next sentence states that "[s]ervice performed by a special Government employee in one department or agency should not be counted by another in connection with the 60-day standard." *Id.* Because this second sentence, setting out the interpretation that "should" be followed in dealing with SGEs serving in more than one agency, results in a *lesser* restriction than the contrary interpretation, the interpretation adopted in that sentence is plainly not prudential. Nor is this lesser restriction a matter of enforcement policy. By their terms, sections 203 and 205 have always tied the 60-day limit to service in the specific agency where a matter is pending, by referring to an SGE "who has served in such department or agency no more than sixty days." The rule about separately counting service in each agency, therefore, comes directly from the language of the statute. The word "should" in the two adjoining sentences on the same subject is most naturally read to have the same meaning in both cases and thus to set out an interpretation of the statutory command, not prudential advice.

Third, while the Executive Branch has adhered to this view, Congress has amended sections 203 and 205. In 1986, it made minor amendments to the proviso in section 203 dealing with the sixty-day limit, *see* Pub. L. No. 99-646, § 47(a)(4), 100 Stat. 3592, 3605, and in 1989 it reenacted section 205 and made minor amendments to the parallel proviso in that section, *see* Pub. L. No. 101-194, § 404, 103 Stat. 1716, 1750. The Federal Personnel Manual's interpretation was public and in force at both times. In making these amendments, Congress did not disturb the consistent administrative interpretation that a portion of any day worked counts as a full day. "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" *Schor*, 478 U.S. at 846 (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274–75 (1974)). We see no reason to depart from that principle here.

**B.**

The memorandum attached to your letter notes that the Attorney General's 1962 Opinion, 42 Op. Att'y Gen. at 117, referred to the Hatch Act in discussing application of the pre-existing conflict of interest laws to intermittent consultants. At that time, the Hatch Act generally applied to an intermittent employee throughout any day on which he did some work for the government. The Hatch Act and its implementing regulations have since been amended, and the Act now applies to an intermittent employee only when he is on duty. *See* 5 C.F.R. § 734.601 (2006). Therefore, you contend, "[s]ince the Attorney General relied on how the Hatch Act applied to SGEs to guide the application of 18 U.S.C. 203 and 205, it is logical that he will continue to apply Hatch Act criteria" and thus should count days of service "on the 'on duty' or hourly basis." DoD Letter, Attachment, *Hatch Act* at 1. But the Attorney General's 1962 Opinion did not, in fact, consider the application of 18 U.S.C. §§ 203 and 205, which did not then exist. The 1962 Opinion "was written before enactment of Pub. L. No. 87-849," which created the category of SGEs, and it "addressed problems largely resolved by these [later] amendments." 1982 Letter at 1. When the 1963 Presidential Memorandum later discussed the rule for counting days—an issue raised by the amendments passed after the 1962 Opinion—it made no reference to the Hatch Act (or to the 1962 Opinion).

The 1962 Opinion, moreover, did not suggest that the Hatch Act had some special significance in construing the terms of conflict of interest laws more generally. The 1962 Opinion sought to answer the question under the earlier conflict of interest laws "whether or not an occasional or intermittent consultant or adviser is an 'officer or employee' at times when his services are not actually being used by the Government or, to put the question more precisely, the circum-

stances in which these statutes may or may not apply to him." 42 Op. Att'y Gen. at 115. It focused particularly on whether such an employee should be subject to the conflict of interest laws throughout his time on the agency's rolls or only on days he actually worked. The Hatch Act presented a "somewhat analogous problem." *Id.* at 117. As then interpreted, the Hatch Act in most cases applied to an intermittent employee only on days he worked, but it also applied "at all other times during [an employee's] service where his Government employment, despite its intermittent character, affords his principal means of livelihood or occupies a substantial portion of his time." *Id.* (citation omitted). The 1962 Opinion suggested only that a similar approach under the conflict of interest laws, "pursuant to regulations . . . might well be held by a court to reflect a sound interpretation of the statutes." *Id.* It did not suggest that the conflict of interest laws needed to be coextensive with the Hatch Act, or even that they ordinarily would be.

Indeed, whatever the rule for counting days, the application of the conflict of interest laws to intermittent employees undoubtedly now differs from the application of the Hatch Act. For example, section 203 would bar an employee from receiving a fee for his partner's work on a specific-party matter in which the employee participated in the government, 18 U.S.C. § 203(c)(1), even if the work took place, and the fee was received, at times when the employee was not on duty and the Hatch Act did not apply.

Nor are we persuaded that the change in the policies on paying experts and consultants under 5 U.S.C. § 3109 (2000) supports abandoning the longstanding rule for counting partial days served by SGEs. The memorandum attached to your letter states that, under the regulations in existence before 1995, pay for consultants and temporary employees had to be computed on a daily rate. Since then, however, "Agencies and Departments . . . have authority to pay experts and consultants by the hour," so "there is no longer a requirement to compute service by days." DoD Letter, Attachment, *Employment of Experts and Consultants (Counting Days or Hours)*. As OGE notes, however, "since the definition of SGE expressly includes unpaid employees, it is not apparent . . . why the methods used by the Government to calculate compensation should have any special bearing" on the method for counting days under the conflict of interest laws. OGE Letter at 3. *See generally* 18 U.S.C. § 202(a) (SGE includes employees "retained, designated, appointed, or employed . . . with or without compensation"). We are aware of no indication that the rules on compensating paid SGEs have played any part in the longstanding interpretation of how days served by SGEs should be computed.

Even if the payment of experts and consultants under 5 U.S.C. § 3109 could potentially bear on the computation of days under 18 U.S.C. §§ 203 and 205, it would tend to support the existing counting rules as the better interpretation of the meaning of sections 203 and 205 upon their enactment. DoD's observation that before 1995, "pay for consultants was computed only on the daily rate" rather than on an hourly rate, DoD Letter, Attachment, *Employment of Experts and Consult-*

*ants (Counting Days or Hours)*, tends to suggest that, at the time the legislation was enacted, Congress understood "days" of service to mean calendar days on which the SGE had performed work. The fact that, over thirty years after enactment (and even six years after the most recent minor amendments), agencies gained the flexibility to pay consultants on an hourly basis cannot change that understanding of the statutory language.

We therefore conclude that the longstanding interpretation under which a partial day of work counts as a full day for purposes of the sixty-day limit in 18 U.S.C. §§ 203 and 205 is well founded and should not be overturned.[4]

STEVEN G. BRADBURY
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[4] OGE has interpreted the 60-day period to exclude days on which an SGE engages in only *de minimis* work, such as making a brief telephone call to confirm the date of a meeting. OGE Letter at 2 n.1; *see also* Manning, *Federal Conflict of Interest Law* at 28 (concluding that while "the employee will be considered to have worked a day for the government if he has worked part of the day," "there is doubtless a *de minimis* limitation on this method of computing; a one-minute telephone call in which the consultant agrees to show up on the following Thursday is hardly enough in itself to count as a 'day' of his one hundred thirty allotted days"). Furthermore, OGE recently issued additional guidance identifying other possible *de minimis* activities. *See Memorandum for Designated Agency Ethics Officials Regarding Counting Days of Service for Special Government Employees*, Informal Advisory Mem. 07x01, 2007 WL 5065667 (Jan. 19). These activities include uncompensated work limited to strictly administrative matters (such as filling out personnel paperwork), uncompensated brief communications (even if substantive), and uncompensated brief periods of reading or other preparation outside the government workplace. OGE's guidance mitigates some of the effects the existing counting rule may have on DoD's ability to attract and retain consultants as SGEs. It also weighs against any argument that the practical administrative demands of the government require a change to the existing rule.